# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: Case No. A04-00997-DMD<br><br>KWAN S. YI and TINA H. YI,<br><br>Debtors. | Chapter 7<br><br>**Filed On<br>1/6/06** |
| JUNG O. LEE,<br><br>Plaintiff,<br><br>v.<br><br>KWAN SU YI and TINA H. YI,<br><br>Defendants. | Adversary No. 05-90011-DMD |

## MEMORANDUM DECISION

This is an action for exception to discharge as well as revocation of discharge. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and the district court's order of reference. I find for the defendants on the exception to discharge counts and for the plaintiff on her revocation of discharge count.

Background

All of the litigants are of Korean descent. Jung Lee and her former husband Sang Lee were postal employees in Seattle. Kwan Su Yi is an Anchorage resident who

worked at "Mom & Pops Grocery" on DeBarr for several years. His wife, Tina, graduated from high school in Texas. She attended the University of Texas at Austin for three years before moving to Los Angeles with her family. She also worked for a law firm prior to moving to Anchorage and marrying Kwan Su.

Kwan Su Yi sought to purchase Mom & Pops Grocery from his former employer, Jelico So. He formed a corporation with Sang Lee to purchase the grocery in 1996. The sale was for $120,000.00 cash plus inventory. Kwan Su and Sang each contributed $70,000.00 cash to the venture. Kwan Su and Tina ran the grocery and paid off the inventory. They agreed to purchase Sang Lee's interest in the grocery store in 1998. They entered into a purchase contract, and signed a financing statement and other documents. They made monthly payments to Sang Lee through December of 2001. The business did poorly, however, and the Lees borrowed heavily from friends, relatives and private lenders to make ends meet. They decided to sell the business in 2002 to Mr. Shin Kang. They received $100,000.00 from Mr. Kang over a six month period of time commencing on January 31, 2002. They used the money to repay loans to friends, relatives and other creditors. They also used it for living expenses.

The Lees divorced. Mrs. Lee received the remaining interest in the purchase contract in the divorce. After the divorce, Mrs. Lee found herself in a dire financial position. She called Mrs. Yi repeatedly in 2001 and early 2002 and asked that the Yis make the payments due on the purchase contract. Tina Yi refused her requests. Mrs. Lee sued the Yis in state court and obtained a judgment. The Yis filed for chapter 7 relief on September 15,

2004. They received a discharge on January 5, 2005. They did not list Jung Lee as a creditor and she did not have knowledge of their bankruptcy case. When Mrs. Lee attempted to enforce her judgment in state court, the Yis filed a copy of their discharge. This action ensued.

Analysis

The plaintiff seeks to except her debt from discharge under 11 U.S.C. § 523(a)(4) and (a)(6). The time for filing an action for exception to discharge is normally sixty days after the first date set for the meeting of creditors.[1] The complaint currently before the court was filed April 25, 2005, well after that deadline had expired in the Yis' bankruptcy case. Mrs. Lee had no notice of the deadline, however. Her action for exception to discharge is therefore timely under 11 U.S.C. § 523(a)(3) and Fed. R. Bankr. P. 4007(b).[2]

Mrs. Lee has the burden of establishing an exception to discharge under § 523(a) by the preponderance of the evidence.[3] Section 523(a)(4) provides for an exception to discharge for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. As noted in *Woodworking Enterprises, Inc., v. Baird (In re Baird),*[4] the scope of § 523(a)(4) is limited. The Ninth Circuit Bankruptcy Appellate Panel stated:

---

[1] Fed. R. Bankr. P. 4007 (c).

[2] *Beaty v. Selinger (In re Beaty)*, 306 F.3d 914, 922 (9th Cir. 2002).

[3] *Grogan v. Garner*, 498 U.S. 279 (1991).

[4] 114 B.R. 198 (B.A.P. 9th Cir. 1990).

3

>11 U.S.C. § 523(a)(4) provides that an individual debtor is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." The meaning of "fiduciary capacity" under section 523(a)(4) is a question of federal law, which has consistently limited this term to express or technical trust relationships. *See, e.g. Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986). The broad general definition of a fiduciary relationship – one involving confidence, trust and good faith – is inapplicable in the dischargeability context. *E.g., Ragsdale*, 780 F.2d at 796. The debt alleged to be non-dischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract. *In re Johnson*, 691 F.2d 249, 251 (6th Cir. 1982). In addition, the requisite trust relationship must exist prior to and without reference to the act of wrongdoing. *E.g., Ragsdale*, 780 F.2d at 796. This requirement eliminates constructive, resulting or implied trusts. *E.g., In re Short*, 818 F.2d 693, 695 (9th Cir. 1987).[5]

The Yis were not trustees of an express trust for the benefit of the Lees. They have breached a contract for payment of a debt but, under state law, this fact alone does not impose a trust relationship upon them. Nor are they responsible for fraud or defalcation while acting in a fiduciary capacity, because they did not occupy such a capacity. Finally, there is no basis for a claim of embezzlement or larceny against them. The plaintiff's § 523(a)(4) claim fails.

11 U.S.C. § 523(a)(6) provides an exception to discharge for willful and malicious injury by the debtor "to another entity or the property of another entity." "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."[6]

---

[5]*Id.* at 201-202.

[6]*Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998).

4

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." . . . Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964).[7]

The Ninth Circuit has adopted a subjective test to determine the "willful injury" prong of § 523(a)(6).[8] A willful injury is found where the debtor "possesses subjective intent to cause harm or knowledge that harm is substantially certain to result from his actions."[9] Here, the Yis may have known that their failure to pay the plaintiff would result in economic injury to her. But this alone will not except a debt from discharge under § 523(a)(6). The "malicious injury" requirement of § 523(a)(6) is a separate finding, which requires "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse."[10] And an intentional breach of contract will not result in an exception from discharge under § 523(a)(6) unless the breach is "accompanied by some form

---

[7]*Id.*, 523 U.S. at 61-62 (emphasis in original).

[8]*Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1145-46 (9th Cir. 2002).

[9]*Id.* at 1145, n.3.

[10]*Id.* at 1146-47, *citing Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001). In *Jercich*, the Ninth Circuit found that an employer's failure to pay his employee's wages was a willful and malicious injury under § 523(a)(6).

5

of 'tortious conduct' that gives rise to 'willful and malicious injury.'"[11] Whether a debtor's conduct is tortious is determined under applicable state law.[12] There is nothing in the record here to support a finding that the Yis' conduct in breaching the purchase contract and failing to pay the plaintiff constituted an intentional infliction of emotional distress or some other form of tortious conduct. Moreover, a breach of the implied covenant of good faith and fair dealing does not constitute a tort.[13]

The purchase contract between the Yis and the Lees gave the Lees the right to repossess the business if the Yis defaulted on their obligations. Under certain circumstances, an injury to property in the context of § 523(a)(6) includes the conversion of property subject to a security agreement.[14]

> Transfers in breach of a security agreement may give rise to nondischargeable liability when the debtor's conduct is knowing and certain to cause financial harm. Unless the creditor can prove not only that the debtor knew of the security interest, but also that the debtor knew that a transfer of the property was wrongful and certain to cause financial harm to the creditor, the debt should not be found nondischargeable. Courts must be careful not to equate a breach of a contract, which happens to be a security agreement, with conduct causing willful and malicious injury.[15]

---

[11] *Jercich)*, 238 F.3d at 1206.

[12] *Id.*

[13] *See Arco Alaska, Inc., v. Akers*, 753 P.2d 1150, 1154 (Alaska 1988).

[14] *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992).

[15] 4 COLLIER ON BANKRUPTCY ¶ 523.12[3] (15th ed. revised 2005) (citations omitted).

For a transfer of property to constitute a willful and malicious injury, there must first be a security interest.[16] There was none here. The purchase contract and other documents that were used in connection with the sale of the grocery store to the Yis were inartfully drafted. No document was specifically entitled a security agreement, nor was there language in any of the documents which granted the Lees a security interest in the grocery's inventory, fixtures, equipment, contract rights and general intangibles. On their face, the documents do not appear to satisfy the minimum requirements of Alaska law for the creation and perfection of a security interest in personal property.[17] Even assuming the documents were sufficient to create a security interest, however, the evidence does not establish that the debtors knew of the existence of such an interest. They knew that if they defaulted under their contract, the Lees had the ability to repossess the business. But the debtors offered to allow repossession and the Lees refused. From the debtors' standpoint, the Lees were just another unsecured creditor demanding full payment. Because the debtors' knowledge of the alleged security interest cannot be established, the Yis' sale of the grocery store to Mr. Kang was not a knowing conversion of property subject to a security interest. The plaintiff's claim for exception to discharge under § 523(a)(6) fails.

---

[16] *Riso*, 978 F.2d at 1154.

[17] A.S. 45.09.203(a)(1)(1998) required a signed security agreement to contain "a description of the collateral." A.S. 45.09.402(a)(1998) required the filing of a financing statement "indicating the types or describing the items of collateral." Here, the financing statement simply listed "Mom and Pops Grocery" as collateral.

7

Mrs. Lee also seeks revocation of the defendant's discharge. Under 11 U.S.C. § 727(d)(1), a court shall revoke a discharge if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of the discharge." A complaint for revocation of discharge for fraud must be filed within one year of entry of discharge.[18] Here, the defendant's discharge was entered January 5, 2005. The plaintiff's complaint to revoke discharge, filed on April 28, 2005, is timely. The burden of proof for revocation of discharge is by the preponderance of the evidence.[19] A material false oath can constitute fraud for the purpose of revocation of discharge.[20] False oaths are material if they affect the administration of the bankruptcy estate by misleading or concealing transfers which might be vulnerable to attack as preferences or fraudulent transfers.[21]

The plaintiff alleges that the defendants' pleadings contain a number of wrongful and deceptive statements. She maintains that the debtors should have listed the $100,000.00 they received from the sale of Mom and Pop's Grocery in their answers to Questions 1 and 2 on the statement of financial affairs. Question 1 asked each debtor to state the gross amount of income they received from "employment, trade, or profession, or from operation of the debtor's business" for the calendar year of the bankruptcy and the two years

---

[18] 11 U.S.C. § 727(e)(1).

[19] *Bowman v. Belt Valley Bank (In re Bowman),* 173 B.R. 922, 925 (B.A.P. 9th Cir. 1994).

[20] *Keeble v. Sulmeyer,* 290 F.2d 127, 131 (9th Cir. 1961) (decided under Bankruptcy Act § 15(1), which provided for revocation of discharge "if the discharge was obtained through fraud of the bankrupt").

[21] *Id.*

immediately preceding the calendar year of filing. The debtors filed their petition in September, 2004. They should have included in their response to Question 1 all income they had received during 2004, as well as for 2002 and 2003. They admit that they operated the grocery during January, 2002. The gross amount of income for this month of operation should have been set forth in their response to Question 1. It wasn't. The $100,000.00 cash payment, however, arose from a sale rather than the operation of their business. The debtors were not required to list this sum in response to Question 1 on the statement of financial affairs.

The plaintiff maintains that the $100,000.00 cash payment should have been listed as a response to Question 2 on the statement of financial affairs. Question 2 requests disclosure of the amount of income derived from any source other than employment or operation of a business, during the two years immediately preceding the commencement of the case. In this case, the two year disclosure period would start on September 15, 2002. The sale of the grocery to Mr. Kang closed on January 31, 2002, and the defendants received a total of $100,000.00 within six months of closing. The debtors were not required to disclose the $100,000.00 they received in response to Question 2 because all payments from Mr. Kang were received more than two years before the filing of the petition.

I do find, however, that the debtors' response to Question 18 on the statement of financial affairs was materially false. Question 18 required the debtors to give a detailed listing of any business they owned within the six years immediately preceding the filing. They were to list the business name, address and taxpayer identification number, describe

9

the nature of the business and provide beginning and ending dates for any business in which they were involved. They should have listed Mom & Pops Grocery in response to this question. The debtors maintain they simply made a mistake by excluding the business. I disagree.

The debtors originally prepared their schedules and statements with a paralegal from the offices of Lanae Austin in March of 2004. They had every opportunity to scrutinize these documents to insure that they were correct before taking them to Ron Offret for filing in September of 2004. Mrs. Yi is fluent in English and has served as a translator for courts. She has attended three years of college at a prestigious university, worked in a law office and become a successful realtor. I don't believe that her answer to Question 18 was the result of mere inadvertence or negligence. The response given for Question 18 was materially false. The Yis also failed to list their largest unsecured creditor, Mrs. Lee, and failed to list their business income from the grocery for 2002 in response to Question 1 on the statement of financial affairs. This compels the conclusion that the Yis deliberately attempted to conceal the $100,000.00 sale and their payments to friends and relatives. This lack of disclosure precluded the trustee and other interested parties, including Mrs. Lee, from investigating the sale transaction and the Yis' payments to insiders, which may have been recoverable as fraudulent transfers.[22] The Yis' discharge was obtained through their fraud. Their discharge will be revoked.

---

[22] *Keeble v. Sulmeyer,* 290 F.2d at 131.

10

Conclusion

The plaintiff's claims for exception to discharge will be dismissed with prejudice. The plaintiff's claim for revocation of discharge will be granted. An appropriate order and judgment will be entered.

DATED: January 6, 2006.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:	M. Gregory Oczkus, Esq.
R. Offret, Esq.
P. Gingras, Adv. Case Mgr. - served 1/6 /06 – aam

1/6/06